**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHAWN TATE,

     Petitioner,                   Civil No. 2:14-CV-12445
                                 HONORABLE ARTHUR J. TARNOW
v.                            UNITED STATES DISTRICT JUDGE

LORI GIDLEY,

     Respondent,

_____/

## OPINION AND ORDER THE DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Shawn Tate, ("petitioner"), confined at the Oaks Correctional Facility in

Manistee, Michigan, filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging his conviction for second-degree murder, M.C.L.A.

750.317; assault with intent to commit murder, M.C.L.A. 750.83; felon in

possession of a firearm, M.C.L.A. 750.224f; and felony-firearm, M.C.L.A.

750.227b.  For the reasons that follow, the petition for writ of habeas corpus is

**DENIED.**  The Court will issue petitioner a certificate of appealability and leave to

proceed on appeal *in forma pauperis.*

### I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit

Court.  This Court recites verbatim the relevant facts relied upon by the Michigan

*Tate v. Gidley,* No. 2:14-CV-12445

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the shooting death of Dwayne Franklin Newton (the victim) outside a known drug house near the intersection of Warren Avenue and Townsend Street on Detroit's east side.

> Defendant was initially charged with first-degree premeditated murder, felon-in-possession, and felony-firearm. At the preliminary examination, the prosecution notified the court and defense counsel of its intent to amend the complaint to add the charge of assault with intent to commit murder, MCL 750.83. Following the preliminary examination, defendant was bound over to the circuit court for trial on all charges contained in the amended complaint.

> On March 10, 2010, defendant pleaded guilty to the lesser offense of second-degree murder, MCL 750.317, and to the charge of felony-firearm, MCL 750.224b, with the agreement that the prosecution would seek sentences of 12 to 30 years for the murder conviction and two years for the felony-firearm conviction. The prosecution agreed to dismiss the remaining charges. The court accepted defendant's pleas and scheduled sentencing for March 24, 2010.

> Defendant appeared for sentencing on March 24, 2010, and moved to withdraw his guilty pleas. Defendant stated, "I don't feel like I should be taking this [plea agreement] for something I didn't do," and informed the court of his belief that defense counsel had "tricked [him] into taking these deals." The circuit court found that setting aside defendant's guilty pleas would not prejudice the prosecution and therefore granted defendant's motion. Thereafter, defense counsel requested that the court allow him to withdraw as defendant's attorney, citing defendant's accusation that counsel had "tricked" him into pleading guilty. The court denied defense counsel's motion to withdraw and scheduled the matter for trial.

> Trial began on May 10, 2010. Defense counsel again requested to withdraw and defendant requested a substitution of counsel, citing a breakdown in the attorney-client relationship. Nonetheless, the circuit

2

*Tate v. Gidley,* No. 2:14-CV-12445

court denied the requests, noting that it was "the very day of trial and so we're going to proceed."

The evidence presented at trial established that the victim had been present with several of his acquaintances in the living room of a drug house at 4840 Townsend Street on the afternoon of October 15, 2009. Defendant and another man approached the house and knocked on the front door. Defendant had been driving his uncle's green Ford Taurus, which was parked outside the home. One of the victim's acquaintances left the living room and answered the door. Defendant asked the man whether he could purchase marihuana and gave the man $20. The man took the $20 into the living room and gave it to the victim. The victim then took two bags of marihuana to the front door and handed them to defendant. Immediately thereafter, witnesses overheard defendant threatening the victim in a loud voice. Several witnesses in the house then heard two or three gunshots and a general commotion at the front door. At that point, the victim came back into the living room, retrieved an assault rifle, and ran out of house. Witnesses subsequently heard several more gunshots outside.

Llachone Welch, who observed the shooting from her second-floor apartment window, saw the victim firing his assault rifle at the green Ford Taurus as defendant drove the car in reverse from Townsend Street onto Warren Avenue. She testified that several bullets hit the windshield as defendant attempted to "get away" in the car. Welch testified that defendant simultaneously fired back at the victim with a handgun as he drove the car. According to Welch, the Ford Taurus eventually came to a stop and defendant got out of the car and ran away. Another witness, Brittany Pruitt, heard the gunshots, looked out her window, and saw the green Ford Taurus come to a stop when it hit a telephone pole. According to Pruitt, a man matching defendant's description then got out of the Ford Taurus and ran around the corner toward Baldwin Street.

Once the shooting had ended, several witnesses went outside and found the victim lying on the ground in a pool of blood, just down the street from the drug house. One of the witnesses testified that he removed the assault rifle that was next to the victim's body and hid it under a roll of carpet in the backyard. Other witnesses noticed that there were several bullet holes in the Ford Taurus, which was parked

3

*Tate v. Gidley,* No. 2:14-CV-12445

across Warren Avenue. The driver's side front door of the Ford Taurus had been left open and defendant was no longer in the car.

Six days later, on October 21, 2009, defendant was seen running from the police in the area of Hoyt Street and Liberal Street on the city's northeast side. Detroit Police Officer Michael Benton witnessed defendant run down an alley, pull a handgun from his waistband, and throw the gun into the yard of a vacant house. Benton and his two partners arrested defendant, whose photograph was later identified by one of the witnesses who had been present at the time of the shooting on October 15, 2009. Officer Benton recovered the discarded handgun and identified it as a 0.40–caliber semiautomatic pistol. The pistol contained five rounds of live ammunition at the time it was recovered.

Detroit Police Officer David Andrews, an evidence technician, responded to the area of Warren Avenue and Townsend Street on the evening of October 15, 2009. Andrews took photographs and made a sketch of the scene. When Andrews arrived, the victim's body had already been removed. However, Andrews testified that there was a large area of blood on the sidewalk where the body had been located. Andrews recovered several 0.45–caliber semiautomatic shell casings from the area near the blood and discovered two 0.40–caliber shell casings in the area as well. He also recovered one 0.40–caliber shell casing from just inside the front door of the drug house, as well as a 0.45–caliber assault rifle, which was hidden under a roll of carpet in the backyard. Andrews then processed the green Ford Taurus, which had sustained extensive damage from gunfire. He located an additional 0.40–caliber shell casing and two bullet fragments inside the car. The vehicle was photographed and impounded.

An assistant Wayne County medical examiner testified that he had performed an autopsy on the victim's body and that the victim had died from a single gunshot wound to the head. The assistant medical examiner found no evidence of close-range firing.

Detective Lieutenant Brett Sojda of the Michigan State Police, a firearms expert, testified that he had received and examined the shell casings that were collected from the scene on October 15, 2009. Sojda testified that he had also examined the 0.45–caliber assault rifle that was recovered from the backyard of the drug house and the

*Tate v. Gidley,* No. 2:14-CV-12445

0.40–caliber semiautomatic pistol that defendant was seen discarding on October 21, 2009.   Sojda identified eight of the recovered 0.45–caliber semiautomatic shell casings as having been fired from the assault rifle in question.   Sojda also identified all four of the recovered 0.40–caliber shell casings as having been fired from defendant's semiautomatic pistol.

The parties stipulated that defendant had been previously convicted of a felony, that his right to carry a firearm had not been restored under Michigan law, and that he was ineligible to carry a firearm at the time of the shooting on October 15, 2009.   Defendant did not testify and the defense presented no witnesses of its own.

The circuit court instructed the jury on the elements of the charged offenses of first-degree premeditated murder, assault with intent to commit murder, felon-in-possession, and felony-firearm.   With respect to the murder charge, the court also instructed the jury on the elements of the lesser offense of second-degree murder.   Defense counsel objected to the court's refusal to provide a self-defense instruction to the jury.   The circuit court explained that it had found that "self-defense [is] not a defense in this particular case" and that it would therefore not instruct the jury in this regard.   The court based its determination that defendant had not acted in self-defense on the evidence that defendant had been the initial aggressor when he fired at least two shots at or near the front door of 4840 Townsend Street.

As noted previously, the jury convicted defendant of the charged offenses of assault with intent to commit murder, MCL 750.83, felon-in-possession, MCL 750.224f, and felony-firearm, MCL 750.227b.   The jury also convicted defendant of the lesser offense of second-degree murder, MCL 750.317.

*People v. Tate*, No. 298675, 2011 WL 4375079, at *1-3 (Mich. Ct. App. Sept. 20, 2011)(internal footnotes omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 491 Mich. 886;

809 N.W. 2d 589 (2012).

*Tate v. Gidley,* No. 2:14-CV-12445

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Tate,* No. 09-028827-FC (Third Circuit Court, Criminal Division, Nov. 6, 2012).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Tate,* No. 314620 (Mich.Ct.App. Sept. 23, 2013); *lv. den.*495 Mich. 948, 843 N.W.2d 532 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court abused its discretion when it denied [Tate's] request for substitution of counsel and two defense requests to withdraw after the court set aside [Tate's] guilty plea based on [Tate's] assertion that counsel tricked him into pleading guilty.

II. Where the evidence of first-degree murder was insufficient, [Tate] is entitled to a new trial where the jury was allowed to [consider] this charge in violation of due process, which substantially decreased his chances of acquittal.

III. The trial court violated [Tate's] due process rights by refusing to instruct the jury on either perfect or imperfect self-defense.

IV. Ineffective appellate counsel for failure to raise ineffective assistance of trial counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

6

*Tate v. Gidley,* No. 2:14-CV-12445

>   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

*Tate v. Gidley,* No. 2:14-CV-12445

## III.  Discussion

### A.  Claim # 1.  The denial of substitute counsel claim.

Petitioner first alleges that the trial judge violated his Sixth Amendment

right to counsel by denying his request for the appointment of substitute counsel

and by denying defense counsel's two motions to withdraw from the case.

The Michigan Court of Appeals rejected petitioner's claim:

We perceive no abuse of discretion in the circuit court's denial of
defense counsel's motions to withdraw.  When counsel made his first
motion to withdraw, the only evidence of a disagreement between
defendant and his attorney was defendant's unsubstantiated
accusation that counsel had "tricked" him into pleading guilty.
Defendant did not explain how he had been tricked; nor did he raise
any other legitimate objections to counsel's performance.  Defendant
merely informed the court that he did not wish to plead guilty to crimes
that he "didn't do."  We conclude that, at the time of counsel's first
motion, there existed insufficient reasons to permit counsel's
withdrawal from the case.  Counsel then moved to withdraw once
more, this time on the first day of trial.  Defense counsel again cited
defendant's accusation that counsel had "tricked" him into entering his
initial guilty pleas.  Observing that it was the "very day of trial," that the
jury was present, and that the prosecution was ready to proceed, the
court denied counsel's second motion to withdraw.  We conclude that
permitting defense counsel to withdraw on the very day set for trial, for
less than compelling reasons, would have unnecessarily delayed the
proceedings and disrupted the judicial process.

Nor do we find any abuse of discretion in the circuit court's refusal to
appoint substitute counsel on defendant's motion.    While we
acknowledge that defendant accused defense counsel of "trick[ing]"
him into entering his initial guilty pleas, we perceive no evidence on
the record to suggest that there existed a legitimate difference of
opinion between defendant and his appointed counsel with regard to
a fundamental issue in the case.  Once defendant had withdrawn his

*Tate v. Gidley,* No. 2:14-CV-12445

guilty pleas and the matter proceeded to trial, defense counsel demonstrated dedication and commitment to defendant's case. Further, our review of the record reveals that counsel was prepared and competent to represent defendant. Among other things, counsel secured the pretrial appointment of a private investigator to assist the defense, aptly cross-examined the prosecution's witnesses at trial, and delivered a thorough closing argument to the jury. It is true that the defense did not call any witness of its own. However, decisions about defense strategy, including what evidence to present and which witnesses to call, "are matters of trial strategy and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." In the end, while it is clear that defendant was unhappy with his appointed attorney, he has provided no concrete reasons to establish that he was entitled to the appointment of substitute counsel. A mere allegation that a defendant lacks confidence in his attorney, unsupported by a substantial reason, does not amount to adequate cause for the appointment of substitute counsel. "Likewise, a defendant's general unhappiness with counsel's representation is insufficient." We find no abuse of discretion in the circuit court's refusal to appoint substitute counsel in this case.

*People v. Tate*, 2011 WL 4375079, at *4 (internal citations and quotations omitted).

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is

9

*Tate v. Gidley,* No. 2:14-CV-12445

willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(quoting *Caplin & Drysdale,* 491 U.S. at 624-25).  However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 (citing to *Wheat v. United States,* 486 U.S. 153, 159 (1988)).  Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985).  "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F. 2d 407, 413 (6th Cir. 1984); *See also Gonzalez-Lopez,* 548 U.S. at 151-52)("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.")(internal citations omitted).  Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry

10

*Tate v. Gidley,* No. 2:14-CV-12445

into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012).  "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.*

Petitioner argues that he was entitled to substitute counsel because a conflict of interest arose between himself and his attorney after petitioner accused counsel at the plea withdrawal hearing of "tricking" him into pleading guilty to second-degree murder.

Petitioner is not entitled to relief for several reasons.

First, petitioner failed to establish good cause for substitution of counsel, where he failed to show that the conflict between himself and his attorney was so great that it resulted in a total lack of communication which prevented an adequate defense. *See United States v. Jennings*, 83 F. 3d 145, 149 (6th Cir. 1996).  Although petitioner told the trial judge at the plea withdrawal hearing that his counsel tricked him into pleading guilty, when asked to elaborate by the judge, the only allegation made by petitioner was that counsel warned petitioner that he was facing life in prison if he were convicted of the original charge. (Tr. 3/24/10, p. 4).  The penalty for first-degree murder, however, is a mandatory

11

*Tate v. Gidley,* No. 2:14-CV-12445

nonparolable life sentence. See M.C.L.A. 750.316(1).  Counsel's advice to

petitioner to plead guilty to the lesser offense of second-degree murder with a

sentence agreement of 12-30 years, so as to avoid a conviction on the first-

degree murder charge with a nonparolable life sentence, is insufficient to support

petitioner's request to discharge and replace counsel. *See e.g. United States v.*

*Gilliam*, 384 F. App'x. 497, 499 (6th Cir. 2010).  Petitioner was not entitled to

substitute counsel because his complaints against counsel involved differences

of opinion regarding strategy rather than any irreconcilable conflict or total lack of

communication. *See e.g. Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich.

2003).   The record in this case does not demonstrate that the disagreements

between the petitioner and his attorney rose to the level of a conflict sufficient to

justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976,

981 (6th Cir. 2005).

Secondly, the judge sufficiently inquired into the petitioner's allegations of

ineffectiveness against counsel at the plea withdrawal hearing and on the first

day of trial.  In light of the fact that there were "multiple lengthy discussions" with

petitioner and his defense counsel about their alleged conflicts, there was no

abuse of discretion in denying his motion for the trial judge to appoint a second

attorney to represent petitioner. *See U.S. v. Vasquez*, 560 F.3d 461, 467 (6th

Cir. 2009).

12

*Tate v. Gidley,* No. 2:14-CV-12445

Finally, petitioner is unable to show that he was prejudiced by the failure of the trial court to appoint substitute counsel, in light of the fact that he received effective assistance of counsel at trial. *Vasquez,* 560 F.3d at 468. "The strained relationship" between the petitioner and his attorney was not a "complete breakdown in communication" that prevented the petitioner from receiving an adequate defense. *Id.*

The Michigan Court of Appeals' conclusion that the trial judge's denial of petitioner's motion to substitute counsel did not violate his Sixth Amendment rights, was not an unreasonable application of federal law, and thus petitioner is not entitled to federal habeas relief. *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011).

## B. Claim # 2.  The insufficient evidence claim.

Petitioner claims that there was insufficient evidence of premeditation and deliberation to support submitting the first-degree murder charge to the jury. Petitioner was acquitted of this charge and found guilty of the lesser included offense of second-degree murder.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's

13

*Tate v. Gidley,* No. 2:14-CV-12445

constitutional rights where the defendant is acquitted of that charge." *Long v.*

*Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*,

347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis original)*; See also Aldrich*

*v. Bock,* 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004). A number of cases

have held that the submission to a jury of a criminal charge constitutes harmless

error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*,

83 F. 3d 760, 765, fn. 4 (6th Cir. 1996); *Long,* 450 F. Supp. 2d at 752; *Aldrich,*

327 F. Supp. 2d at 761; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D.

Mich. 2001); *But see Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D.Mich.

2002)(finding this claim cognizable). In light of the fact that petitioner was

acquitted of the first-degree premeditated murder charge and only found guilty of

the lesser included offense of second-degree murder, any error in submitting the

first-degree premeditated murder charge to the jury would not entitle petitioner to

habeas relief. *See King v. Trippett*, 27 F. App'x. 506, 510 (6th Cir.

2001)(petitioner who alleged that the trial court improperly refused to enter a

directed verdict on his armed robbery charge, even though the jury subsequently

acquitted him on that charge, failed to state a claim sufficient for habeas corpus

relief).

Moreover, there was sufficient evidence of premeditation and deliberation

to support submitting the first-degree murder charge to the jurors. It is beyond

14

*Tate v. Gidley,* No. 2:14-CV-12445

question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d at 596)(citing

*Tate v. Gidley,* No. 2:14-CV-12445

*People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)).

Premeditation may be established through evidence of the following factors:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d at 594-95 (quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).   "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596(quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App.

16

*Tate v. Gidley,* No. 2:14-CV-12445

123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

As the Michigan Court of Appeals noted in rejecting petitioner's claim, See *Tate*, 2011 WL 4375079, at *5, there was sufficient evidence of premeditation and deliberation to support submitting the first-degree murder charge to the jurors.  Petitioner brought a loaded handgun to the victim's house and verbally threatened him.  Petitioner fired several shots at the front door of the victim's house moments before the actual killing.  Petitioner fled the scene.  When police spotted petitioner six days later, petitioner ran down an alley, pulled the murder weapon from his waistband, and threw it into the yard of a vacant house in an attempt to hide the gun.  All of these factors were sufficient evidence of premeditation and deliberation so as to warrant submitting the first-degree murder charge to the jury.  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The jury instruction claim.

Petitioner claims that the trial judge deprived him of a fair trial by refusing to instruct the jurors on self-defense and imperfect self-defense.

17

*Tate v. Gidley,* No. 2:14-CV-12445

A defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "[A] necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow,* 288 F. 3d 846, 852 (6th Cir. 2002).

A defendant is therefore entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). A state trial court's failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the Due Process Clause. *Taylor,* 288 F. 3d at 851.

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999)(citing to *People v. Heflin*, 434 Mich. 482; 456 N. W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and

18

*Tate v. Gidley,* No. 2:14-CV-12445

reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).

The trial judge declined to instruct the jurors on self-defense because petitioner was the initial aggressor.  The trial court's refusal to instruct the jury on the defense of self-defense did not deprive petitioner of a fair trial, in light of the fact that petitioner initiated the confrontation.  Because petitioner was not entitled under Michigan law to assert a self-defense claim, the trial court's failure to give an instruction on the defense of self-defense did not deprive petitioner of his constitutional right to due process. *See e.g. Allen v. Morris,* 845 F. 2d 610, 616-17 (6th Cir. 1988); *Melchior v. Jago,* 723 F. 2d 486, 493-94 (6th Cir. 1983).

Petitioner further claims that the judge erred in failing to instruct the jurors in imperfect self-defense, which would reduce the murder charge to voluntary manslaughter.

At the time of petitioner's trial, the Michigan Supreme Court had yet to recognize the doctrine of imperfect self-defense as a defense. *See People v.*

19

*Tate v. Gidley,* No. 2:14-CV-12445

*Posey*, 459 Mich. 960; 590 N.W. 2d 577 (1999).  The Michigan Court of Appeals,

however, had recognized imperfect self-defense as a qualified defense that

could mitigate a murder charge to voluntary manslaughter.  The Michigan Court

of Appeals held that the defense of imperfect self-defense was available where

the defendant would have been entitled to raise the theory of self-defense had

he or she not been the initial aggressor. *See People v. Kemp*, 202 Mich. App. at

323.

Recently, however, the Michigan Supreme Court held that the doctrine of

imperfect self-defense is not available as " a freestanding defense that mitigates

a murder to manslaughter because it was not recognized as such under the

common law at the time the Legislature codified the crimes of murder and

manslaughter." *People v. Reese*, 491 Mich. 127, 150; 815 N.W.2d 85 (2012).

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,*

421 U.S. 684, 691 (1975).  What is essential to establish the elements of a crime

is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir.

2002).  Likewise, "[D]ue process does not require that a defendant be permitted

to present any defense he chooses.  Rather, states are allowed to define the

elements of, and defenses to, state crimes. " *See Lakin v. Stine,* 80 F. App'x.

368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87

(2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).  The

20

*Tate v. Gidley,* No. 2:14-CV-12445

circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.*

Although at the time of petitioner's trial the Michigan Court of Appeals had held that the doctrine of imperfect self-defense exists as a defense to the crime of murder, the Michigan Supreme Court has now held that imperfect self-defense is not available as a defense to murder charges in Michigan. Because of this change in the law, petitioner would not be entitled to habeas relief on his claim. Habeas relief under 28 U.S.C. § 2254 "is available only to state prisoners who currently are being held in violation of an existing constitutional right, not to inmates who at one point might have been able to show that a since-overruled Supreme Court or lower court precedent would have granted them relief." *Desai v. Booker*, 538 F. 3d 424, 428 (6th Cir. 2008). There is no practical remedy that this Court can give to petitioner by granting him a new trial. The most that petitioner could hope for is a new trial, in which he would no longer be permitted under Michigan law to raise a defense of imperfect self-defense. Any new trial would look identically like the old trial in the sense that the jury would again not be instructed on imperfect self-defense, thus, the trial court's failure to instruct on imperfect self-defense at petitioner's trial "is the epitome of a harmless and therefore uncorrectable error on habeas review." *Id.* (Citing *Brecht v.*

21

*Tate v. Gidley,* No. 2:14-CV-12445

*Abrahamson*, 507 U.S. 619, 638 (1993)).  Petitioner is not entitled to habeas

relief on his third claim.

### D.  Claim # 4.  The ineffective assistance of counsel claim.

Petitioner claims that appellate counsel was ineffective for failing to raise

several ineffective assistance of trial counsel claims on direct appeal.

Respondent contends that petitioner's fourth claim is procedurally

defaulted, because he raised it for the first time in his post-conviction motion for

relief from judgment and failed to show cause for failing to raise this claim in his

appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Petitioner could not have procedurally defaulted his ineffective assistance

of appellate counsel claim, because state post-conviction review was the first

opportunity that he had to raise this claim. *See Guilmette v. Howes,* 624 F. 3d

286, 291 (6th Cir. 2010).  Moreover, to the extent that respondent argues that

petitioner's underlying ineffective assistance of trial counsel claims are defaulted

pursuant to M.C.R. 6.508(D)(3), petitioner claims that his appellate counsel was

ineffective for failing to raise his claims in his appeal of right.  Ineffective

assistance of counsel may establish cause for procedural default. *Edwards v.*

*Carpenter*, 529 U.S. 446, 451-52 (2000).  If petitioner could show that he

received ineffective assistance of appellate counsel that rose to the level of a

22

*Tate v. Gidley,* No. 2:14-CV-12445

Sixth Amendment violation, it would excuse his procedural default for failing to

raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224

F. 3d 542, 550 (6th Cir. 2000).  Given that the cause and prejudice inquiry for the

procedural default issue merges with an analysis of the merits of petitioner's

defaulted claims, it would be easier to consider the merits of these claims. *See*

*Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

To show that he was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test.  First,

the defendant must demonstrate that, considering all of the circumstances,

counsel's performance was so deficient that the attorney was not functioning as

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*,

466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.*  In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must

show that such performance prejudiced his defense. *Id.*  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.

23

*Tate v. Gidley,* No. 2:14-CV-12445

The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005). The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner first claims that trial counsel was ineffective for failing to call witnesses to support his self-defense claim.  Petitioner did not mention the names of these witnesses in his state post-conviction motion or in his habeas petition.  Petitioner also failed to attach any affidavits from any witnesses to his state post-conviction motion or appeal briefs, nor did he provide this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28

24

*Tate v. Gidley,* No. 2:14-CV-12445

U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner has offered, neither to the Michigan courts

nor to this Court, any evidence beyond his own assertions as to whether the

witnesses would have been able to testify and what the content of these

witnesses' testimony would have been.  In the absence of such proof, petitioner

is unable to establish that he was prejudiced by trial counsel's failure to call

these witnesses to testify at trial, so as to support the second prong of an

ineffective assistance of trial counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,*

557 (6th Cir. 2007).

Petitioner next claims that trial counsel should have filed a pre-trial motion

to dismiss the first-degree murder charge on the ground that there was

insufficient evidence of premeditation and deliberation.  The evidence at trial was

similar to the evidence presented at the preliminary examination.  Because there

was sufficient evidence of premeditation and deliberation presented at the

preliminary examination to bind petitioner over for trial on the first-degree murder

charge, counsel was not ineffective for failing to file a motion to quash the

information to seek a dismissal of this charge. *See e.g. Dell v. Straub,* 194 F.

Supp. 2d 629, 649 (E.D. Mich. 2002).

Petitioner next contends that trial counsel was ineffective for failing to

move to strike a biased juror.  Before trial was to begin, one of the jurors

informed the judge that he had not realized until break that he knew "this man

25

*Tate v. Gidley,* No. 2:14-CV-12445

from somewhere," although he was "not sure where," and that he might know some of the witnesses.  It is unclear from the record whether the juror was referring to petitioner or someone else in the courtroom.  He asked the judge to read the witness list to him.  The prosecutor read the witness list.  The juror responded that he knew a witness, but that she did not live in Detroit.  When the prosecutor indicated that the witness was African-American, the judge asked the juror if this resolved the issues in his mind and he replied affirmatively. (Tr. 5/10/10, pp. 115-17).

To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *See also Miller v. Francis,* 269 F. 3d 609, 616 (6th Cir. 2001)(when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror, the defendant must show that the juror was actually biased against him).  Petitioner has offered no evidence that this juror was actually biased towards him, thus, counsel was not ineffective for failing to move to strike this juror.

Petitioner lastly claims that trial counsel was ineffective for failing to request an instruction on the lesser included offense of voluntary manslaughter under an imperfect self-defense theory.

26

*Tate v. Gidley,* No. 2:14-CV-12445

A failure to request charges on all possible lesser included offenses may be proper trial strategy. *See Tinsley v. Million,* 399 F. 3d 796, 808 (6th Cir. 2005). Because counsel may have wished to avoid this possibility, the decision not to request lesser included offenses is not ineffective assistance of counsel. *See Lewis v. Russell,* 42 F. App'x. 809, 810-11 (6th Cir. 2002)(trial counsel's failure during murder trial to request jury instruction on lesser-included offense of voluntary manslaughter constituted reasonable strategic decision consistent with defendant's effort to seek full acquittal on basis of self-defense, and thus did not constitute deficient performance); *Edwards v. Mack,* 4 F. App'x. 215, 217-18 (6th Cir. 2001)(counsel's waiver of jury instructions on lesser-included offenses was not ineffective assistance, where defendant did not want jury instructed on lesser included offenses, but instead hoped to obtain an acquittal by having jury instructed on the murder charge only; moreover, even if counsel pursued strategy without the defendant's permission, it constituted a proper exercise of counsel's judgment to waive lesser included offense instructions).

Moreover, the Michigan Court of Appeals concluded that petitioner was not entitled to an instruction on imperfect self-defense under Michigan law because the evidence established that petitioner initiated the confrontation with the victim at the front door of 4840 Townsend Street with the intent to kill or inflict great bodily harm. *People v. Tate*, 2011 WL 4375079, at * 6-7. In analyzing

27

*Tate v. Gidley,* No. 2:14-CV-12445

petitioner's claim that counsel was ineffective for failing to request such an

instruction, this expression of state law is binding on this Court. *See Strayhorn v.*

*Booker,* 718 F. Supp. 2d 846, 870 (E.D. Mich. 2010)(internal citations omitted).

Because the imperfect self-defense instruction was inappropriate under state

law, counsel was not ineffective for failing to request such an instruction. *Id;, See*

*also Mitzel v. Tate,* 267 F. 3d 524, 538 (6th Cir.2001).  Petitioner is not entitled to

habeas relief on his ineffective assistance of trial counsel claims.

Because petitioner has failed to show that his trial counsel was ineffective,

petitioner is unable to establish that appellate counsel was ineffective for failing

to raise these ineffective assistance of trial counsel claims on his appeal of right.

*See e.g. Fautenberry v. Mitchell,* 515 F. 3d 614, 642 (6th Cir. 2008).  The Court

therefore rejects petitioner's fourth claim.

**E.  A certificate of appealability.**

A habeas petitioner must receive a certificate of appealability ("COA") in

order to appeal the denial of a habeas petition for relief from either a state or

federal conviction. [1] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA

---

[1] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

*Tate v. Gidley,* No. 2:14-CV-12445

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85.  Any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004).  Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the 28-45 year prison sentence that he is serving on the second-degree murder conviction along with the consecutive 2 year sentence on the felony-firearm conviction.

29

*Tate v. Gidley,* No. 2:14-CV-12445

The Court thus issues petitioner a COA.  Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous.  A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Tate is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: October 23, 2015

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 23, 2015, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

30